ZENO B. BAUCUS
BRYAN T. DAKE
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Avenue North, Suite 3200
Billings, Montana 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
Email:  zeno.baucus@usdoj.gov
           bryan.dake@usddoj.gov

ATTORNEYS FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>JAMES E. "DOC" JENSEN, JR.<br><br>Defendant. | CR 18-155-BLG-DLC<br><br>UNITED STATES BRIEFING ON USE OF "ANY FACILITY OF INTERSTATE COMMERCE" TO COMMIT THE OFFENSE |
|---|---|

Pursuant to the change of plea hearing that occurred on February 12, 2019, and the Court's request for briefing on the issue of use of "any facility of interstate commerce," as it appears in 18 U.S.C. §2422(b), the offense Jensen intends to plead to, the United States submits this analysis for the Court's review.

As the amended offer of proof indicates, Jensen did directly use a "facility or means" of interstate commerce, the telephone, to communicate with at least one of

minor victims to induce the boy to participate in his "Program" of sexual abuse. Jensen called the boy, who he had previously been grooming, upon his return to Miles City. Following the call, the victim reentered Jensen's Program, culminating increased sexual contact including masturbation to ejaculation. That, in itself, is sufficient to prove the jurisdictional element.

In addition, as detailed below, courts have been clear that the means of interstate commerce need not be used to communicate directly with the intended victim. Jensen's use of the internet to obtain authority to aid in his effort to transform or overcome the will of his victim falls within the plain language of the statute and the intent of Congress. Finally, Jensen used travel on interstate highways and airways on wrestling trips to induce minors to engage in sexual contact and to isolate them so they could be groomed for his Program.

## BACKGROUND

On December 21, 2018, Jensen was indicted with a single count of Coercion and Enticement, pursuant to 18 U.S.C. § 2422(b). As listed in the Indictment, the charge revolved around Jensen's implementation of "The Program" that he administered on juvenile males in the 1990s in Miles City, Montana while serving as the athletic trainer at Custer County District High School.

With respect to one victim in particular, the amended offer of proof details instructive of Jensen's use of interstate commerce. Jensen accompanied the victim to a wrestling tournament in North Dakota during the winter of 1994-1995, when the victim was in seventh grade. Amended Offer of Proof (OOP ¶5). On the trip, the victim had to go see Jensen for a "hernia check," which involved Jensen touching the boy's genitals. *Id.* Around the time of this trip, the victim learned about "The Program," which the Jensen obtained from the internet for the purpose of enticing juveniles to submit to sexual contact from Jensen in the hopes of receiving alleged physical benefits.1 *Id.* ¶¶ 3, 6. The victim then submitted to Jensen's program for several months. Jensen provided the victim his phone number and communicated with the victim both face-to-face and over the phone regarding "treatments." During this period, the treatments involved full frontal and back massages. *Id.* ¶ 10.

The victim then moved away from Miles City for a period of time and then returned. When he returned, Jensen called him on the telephone to reconnect. *Id.* Following the call, the victim rejoined the "Program." *Id.* The victim's "Program" treatment's escalated to include masturbation to ejaculation.

---

1 Jensen's used computer printouts of Program materials in his efforts to persuade individuals of the alleged benefits of submitting to his sexual contact. OOP, ¶12.

On February 7, 2019, Jensen informed the Court that he wished to plead guilty to the Indictment without the benefit of a plea agreement. Doc. 17. Chief Judge Christensen referred the change of plea to the Magistrate Judge and Jensen's change of plea was scheduled for February 12, 2019. Docs. 18-19. At the change of plea hearing, the Court expressed "concern[]…[with] what portion of [the government's] offer of proof…relates to" the use of a means of interstate commerce, one of the elements of the offense. Transcript of Feb. 12, 2019, Change of Plea Hearing at 22-23. Pursuant to the contemporaneously filed amended offer of the proof, the jurisdictional element of § 2422(b) is established by three types of use: telephone calls, searching for and downloading the Program from the internet, and interstate travel.

## LEGAL STANDARD

"A district court must accept an unconditional guilty plea so long as it meets the requirements of Federal Rule of Criminal Procedure 11(b)." *United States v. Nickle*, 816 F.3d 1230, 1233 (9th Cir. 2016). To comply with Rule 11(b), the court must determine that the plea is knowing, voluntary and intelligent, and has a factual basis. *Id.*; Fed. R. Crim. P. 11(b). The factual-basis requirement "ensure[s] that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged." *United States v. Mancinas-Flores*,

4

588 F.3d 677, 682 (9th Cir. 2009) (as amended). "A district court's discretion in this area is limited." *Nickle*, 816 F.3d at 1233. A court "can only reject a plea for lack of a factual basis if the defendant denies committing a specific element of the offense or protests his innocence even after demonstrating that he understands the charge." *Id.*

"There is no requirement in Rule 11(b) that the defendant himself give an in-depth account of his crime or confirm that everything in the government's offer of proof is true." *Id.* Even if the defendant disputes facts in the government's offer of proof, the plea should be taken where the defendant does not "suggest that the government [does] not have 'sufficient evidence for a jury to conclude that he is guilty.'" *Id.* (quoting *United States v. Webb*, 433 F.2d 400, 403 (1st Cir. 1970)).

## ARGUMENT

Section 2422(b) of Title 18 of the United State Code states that "[w]hoever, using the mail or any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces and individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for

which any person can be charged with a criminal offense, or attempts to do so," is guilty of the offense of coercion and enticement.[2]

The Ninth Circuit has noted, "[t]here can be no doubt that Congress has frequently addressed the problem of sexual predators who utilize instrumentalities of interstate commerce to prey on minors." *United States v. Shill*, 740 F.3d 1347, 1352 (9th Cir. 2014). With respect to 18 U.S.C. § 2422(b) in particular, the Ninth Circuit made clear that "Congress intended the statute's reach to be broad." *Id.*

As an initial matter, there is no question that both use of the telephone and use of the internet are uses of a facility or means of interstate commerce. *See United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) ("Telephones are instrumentalities of interstate commerce."); *United States v. Tello*, 600 F.3d 1161, 1164-1165 (9th Cir. 2010) (internet is a means of interstate commerce). That is true even where the telephone is used for purely intrastate calls. *Nader*, 542 F.3d at 720 ("[I]ntrastate telephone calls involve the use of a facility 'in' interstate commerce."); *United States v. Carson*, No. 10-cr-4794-BTM, 2011 U.S. Dist. LEXIS 96867, *5 (S.D. Cal. Aug. 29, 2011) (holding that intrastate phone calls

---

[2] The maximum penalty for this statute at the relevant time period of the indictment was fifteen years of imprisonment, although this statutory penalty has since been amended. *See Protection of Children from Sexual Predators Act of 1998*, PL 105-314, Oct. 30, 1998, 112 Stat 2974.

sufficient to survive as-applied commerce clause challenge to 18 U.S.C. § 2242(b)).

The telephone calls that Jensen had directly with at least one of his minor victims, as described in the government's amended offer of proof, are sufficient in themselves to prove that Jensen used a facility of interstate commerce to commit the offense. As detailed in the background section, Jensen's use of the telephone both with respect to "treatment" sessions and, in particular, in reconnecting with the North Dakota victim to get him to rejoin the Program, amply demonstrate "use" of the telephone in Jensen's efforts to induce the victim to submit to his sexual contact. These calls regarding treatments ostensibly to improve the victim's physical performance and wrestling success "fit neatly within the common understanding of persuade, induce, or entice." *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007); *see id.* (explaining that a rational juror could find that activities that constitute "grooming" of child victims violated §2422(b), including such things as offers of recreational activities and a motorcycle). Arranging meetings with the victim are similarly use of the internet. *Id.* at 1236.

In addition, the United States' offer of proof sets forth that Jensen's communications with third-party websites, via the internet, to obtain "The Program" was essential to his purpose of persuading, inducing, enticing, and

7

coercing his minor victims into sexual activity, and—in the facts of this case—is sufficient to prove the use of a facility of interstate commerce to commit the offense.

The plain language of the statute provides no restrictions on the particular "us[e]" the "facility or means of interstate commerce" must be put to in order to persuade, induce, entice, or coerce the minor. *See Shill*, 740 F.3d at 1352 (refusing to read a limitation into a federal statute where "[t]here is no basis in the text" to do so (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). As explained in a well-considered opinion by the D.C. Circuit, the ordinary meanings of the verbs persuade, induce, entice, and coerce demonstrate that § 2422(b) is intended to prohibit acts that seek to transform or overcome the will of the minor. *United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014) (discussing dictionary definitions). The customary usage of these verbs also includes the use of third-parties to aid or help transform or overcome another's will. *Id.* (citing, e.g., Webster's Third New International Dictionary, Unabridged (1981) ("Burt, aided by his father and friends, induced Congress to aid his state in building such a canal.")); *see also United States v. McMillan*, 744 F.3d 1033 (7th Cir. 2014) ("One particularly effective way to persuade or entice a person to do something is to enlist the help of a trusted relative, friend, or associate."). Accordingly, courts

8

around the country have declined to interpret the statute to require the defendant to use a means of interstate commerce to communicate directly with the minor. *See United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014); *United States v. McMillan*, 744 F.3d 1033 (7th Cir. 2014)); *United States v. Caudill*, 709 F.3d 444 (5th Cir. 2013); *United States v. Berk*, 652 F.3d 132 (1st Cir. 2011); *United States v. Douglas*, 626 F.3d 161 (2d Cir. 2010) (per curiam); *United States v. Nestor*, 574 F.3d 159 (3d Cir. 2009); *United States v. Spurlock*, 495 F.3d 1011 (8th Cir. 2007); *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004).

Moreover, courts have rejected the argument that the term "use" requires "the use of a means of interstate communication *for the act of persuasion of the minor (or attempt to persuade the minor)*." *Hite*, 769 F.3d at 1164 (emphasis added). Nothing in the language of the statute or precedent discussing the term "use" justifies such a narrow reading. In *Hite*, the court found instructive the Supreme Court's discussion of "use" in *Bailey v. United States*, 516 U.S. 137 (1995), where the Court considered what constituted "use" of a gun during and in relation to a drug crime. *Hite* agreed with *Bailey* that use involved "active employment" in the commission of an underlying offense, but noted that use could include a mere reference to the firearm when such reference is "calculated to bring about change in the circumstances of the predicate offense." *Hite*, 769 F.3d at

9

1164 (quoting *Bailey* 516 U.S. at 148). *Hite* also noted that the term "use" in the statute at issue in *Bailey* was restricted by the statutory language "during and in relation to," which is not present in § 2422(b). *Id.* Accordingly, the court concluded that "using the mail or any facility of interstate commerce" is satisfied if the defendant knowingly and actively employs such interstate means for the essential function of communicating with a third-party for the purpose of persuading, inducing, enticing or coercing the minor. *Id.* (holding that essential communication with "adult intermediary" with requisite intent was sufficient).

While *Hite* and the other cases cited above addressed the circumstances where the third-party served as a go-between between the defendant and the victim, active employment of the internet to obtain third-party aid or assistance to transform or overcome the will of the minor falls equally within the coverage of the statute. In this case, Jensen used the pseudoscientific authority of the Program materials "to transform or overcome another's will," just as if he had used "the help of a trusted, relative, or friend" in his efforts to persuade. He printed off those materials and used them as aids in persuasion.

It is beyond dispute that a defendant using the internet or phone to contact a parent to get the endorsement of the defendant's activities grooming the child constitutes "use" under the statute. That would be equally true whether the parent

10

provided the endorsement to the child directly, or the defender obtained the endorsement over the internet and approached the child with it himself (i.e., "I spoke with your father and . . ."). Likewise, Jensen's use of the internet to obtain the persuasive authority of the Program is "use" even if the Program's author had no face-to-face encounters with the minors. It is critical in this regard that Jensen did not just obtain and utilize general medical texts that he later transformed for his immoral purposes. He sought out and obtained internet assistance targeted to making minors susceptible to inducement or enticement by adults. His malicious intent is embodied in the Program document and legitimacy it provided materially assisted his attempts to induce the minors. Prohibiting that activity is in the heartland of what § 2242(b) was designed by Congress to do.

Indeed, the House Conference Report of the Telecommunications Act of 1996, which included § 2422(b), notes that "the Senate Judiciary Committee held a hearing on online indecency, obscenity, and child endangerment ... this hearing supports the need for Congress to take effective action to protect children and families from online harm." H.R.Rep. No. 104–458, at 193 (1996), 1996 U.S.C.C.A.N. 10, 206 (Conf.Rep.). The Committee Report on the Child Protection and Sexual Predator Punishment Act of 1998, which increased the penalty for violation of § 2422 (b), emphasizes that the bill was "a comprehensive response to

the horrifying menace of sex crimes against children, particularly assaults facilitated by computer ... [that seeks to] provid[e] law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." H.R.Rep. No. 105–557, at 10 (1998), 1998 U.S.C.C.A.N. 678, 678. As the Fourth Circuit concluded, "[t]he primary evil that Congress meant to avert by enacting § 2422(b) was the psychological sexualization of children." *United States v. Fugit*, 703 F.3d 248, 255 (4th Cir.2012). Prohibiting the use of the internet to obtain materials designed for and utilized to victimize children is just as consistent with this goal as prohibiting the use of internet chatrooms to contact children directly or prohibiting the use of intermediaries to induce minors.

The Court fairly queried whether considering "use" of interstate commerce beyond direct communications with the victims risks opening the floodgates to enticement charges where a means of commerce was only tangentially related to the offense. There are two responses. First, Congress elected to use the specific wording "use…*any* facility or means of interstate commerce" rather than the term "communicates on a facility or means of interstate commerce." It is Congress's role to manage the floodwaters in that respect. *See Shill*, 740 F.3d at 1352 (2014) ("Congress intended the statute's reach to be broad.") Second, the standard articulated by the D.C. Circuit that the defendant "knowingly and actively employs

12

such interstate means" for an "essential function" with the purpose of enticing minors is a high bar, but one that can clearly be met in this case under the United States' offer of proof. Jensen's own admissions make clear that he sought out and obtained "The Program" on the internet and this information was essential to Jensen's persuasion, inducement, enticement or coercion of the juvenile male athletes. In sum, he actively used the internet to obtain that key means of inducement. Moreover, the Court need not conclude that the statute sweeps in purely innocent materials obtained on the internet and later used by a defendant. Here, the materials are inherently sexual and designed to get the minors to consent to sexual activity and they reflect the defendant's intent in the same way a third-party would. It is not an outlier case. This is exactly the kind of "facilitate[ion] by computer" that Congress envisioned when it increased the pentalty to for a violation of § 2422(b) as part of "a comprehensive response to the horrifying menace of sex crimes against children." 1998 U.S.C.C.A.N. 678, 678.

Finally, in addition to Jensen's use of telephone and internet, the offer of proof also details Jensen's use of interstate highways and airways in a way "calculated to bring about a change in circumstances" of the offense. *See Hite*, 769 F.3d at 1165 (quoting *Bailey*, 516 U.S. at 148). As the Ninth Circuit has held "travel by a defendant to meet a potential victim is probative, but not required, to

advance and verify an intent to persuade, induce, entice, or coerce." *Goetzke*, 494 F.3d at 1236. Jensen used the interstate trip to North Dakota as an opportunity to directly induce minors to submit to sexual contact—but for the trip he would not have had the opportunity to induce the minors to submit to sexual contact of ostensible "hernia checks". *See United States v. D'Souza*, No. 2:09-cr-00131-MCE, 2012 U.S. Dist. LEXIS 14928, at *1 (E.D. Cal. Feb. 7, 2012) (rejecting motion to withdraw plea agreement over claim that defendant did not "use" interstate commerce because, *intra alia*, defendant admitted to use of interstate highways in the course of his criminal conduct). Moreover, a jury could reasonably conclude that Jensen used the isolation and authority of both interstate trips to continue his efforts to recruit and "groom" new victims. Jensen was able to "use" the North Dakota to get access to younger boys intent on competing at higher level of wrestling and, thus, particularly susceptible to Jensen's efforts to induce them into his twisted Program.

## CONCLUSION

The reasons stated above and included in the amended offer of proof, Jensen utilized "any facility of interstate commerce" to commit the offense for which he intends to plead guilty.

//

DATED this 20th day of February, 2019.

KURT G. ALME
United States Attorney


*/s/ Zeno B. Baucus*
ZENO B. BAUCUS
Assistant United States Attorney

*/s/ Bryan T. Dake*
BRYAN T. DAKE
Assistant United States Attorney