**ZENO B. BAUCUS**
**BRYAN T. DAKE**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Avenue North, Suite 3200**
**Billings, Montana 59101**
Phone:  (406) 657-6101
FAX:      (406) 657-6989
Email:   zeno.baucus@usdoj.gov
              Bryan.dake@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **JAMES E. "DOC" JENSEN, JR.,** Defendant. | CR 18-155-BLG-DLC **AMENDED OFFER OF PROOF** |

The defendant, James E. "Doc" Jensen, Jr., has filed a motion to change his plea to guilty to the Indictment, charging him with coercion and enticement, in violation of 18 U.S.C. § 2422(b).  This offense carries a penalty of fifteen years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.   Restitution is mandatory.

There is no plea agreement.   Resolution of the case without a plea agreement is the most favorable resolution for the defendant, and the most favorable offer made to the defendant.   *See Missouri v. Frye*, 566 U.S. 134, 145-46 (2012).

*Elements.*   In order to prove the case against the defendant at trial, the United States would have to prove the following elements beyond a reasonable doubt:

> First, the defendant used a means of interstate or foreign commerce;
>
> Second, the defendant used the means of interstate commerce to knowingly persuade, induce, entice, or coerce;
>
> Third, a person under 18 years of age; and
>
> Fourth, to engage in any sexual activity for which any person can be charged with a criminal offense.
>
> At the time of the offense, Sexual Assault was prohibited pursuant to Mont. Code Ann. § 45-5-502.

*Proof.*   If called upon to prove this case at trial, and to provide a factual basis for the defendant's plea, the United States would present, by way of witnesses and documentary evidence, the following[1]:

---

[1] The Offer of Proof does not encompass all of the proof that the United States would offer at trial.   Rather, it includes the proof that would be necessary to support the elements of the charge to which the defendant is pleading guilty.

**Summary**

1. Beginning in the 1970's and continuing until approximately 1998, the defendant served as an athletic trainer at Custer County District High School in Miles City, Montana.

2. While acting in this capacity, and commencing before 1995, the defendant employed what, what would be known as "The Program," on juvenile students at Custer County District High School. Based on multiple interviews of numerous former members of "The Program," the defendant represented to the minors, who were male student-athletes, that if they engaged in increasing levels of sexual activity with the defendant, their physical performance would increase. The sexual activity, which was perpetrated against the male student-athletes, who the defendant knew were minors at the time, included masturbation, digital penetration, and oral sex. Interviews with victims would confirm that the defendant engaged in this conduct until at least 1999 and after his association with Custer County District High School.

3. The defendant was interviewed in connection with the investigation. In one interview, Jensen noted that "the origin of the [Program] is from uhm Chinese Oriental medicine uhm I researched it off the internet …" and

how its alleged physical benefits enticed juvenile males to engage in levels of "The Program."   Jensen said in this interview that he only performed masturbation as part of "The Program," however, he also admitted to at least one incident of oral sex on a juvenile male victim. Jensen later admitted to the basic tenets of "The Program." Again, he stated that he obtained the information for its administration from the Internet, and had applied it to hundreds of minor children.   Jensen again described "The Program" as "Chinese acupuncture" and described it as "just one I found on the internet."

## Additional Evidence

4. Jensen then used "The Program's" perceived benefits that he had gained from the Internet to attempt to recruit other juvenile male victims into The Program.   This included describing "The Program" as being about "strength and testosterone."   For one victim, Jensen told him that he could "probably play college football" and "The Program" could help him get there.

5. In the winter of 1994-1995, another victim, hereafter referred to as "North Dakota Victim" then in seventh grade, attended a wrestling tournament with Custer County District High School in Watford City, North Dakota.

The school took a bus to Watford City and on this trip were a coach, an assistant coach, and Jensen. This was a one day wrestling trip and they returned to Montana the same day. When they arrived in Watford City, the North Dakota Victim was one of several boys, including other seventh graders, who had to go see Jensen for what was described as a "hernia check." The North Dakota Victim described how the boys were only wearing towels while waiting to see Jensen. When they got to Jensen, he had them open their towels and sit down on a chair with their genitals exposed. The North Dakota Victim then described Jensen moving his penis around, rubbing his testicles with his hands, and feeling the groin area. There were no other adults present for these exams.

6. The North Dakota Victim found out about "The Program" around the time of this trip to North Dakota. In the summer following the North Dakota trip (between his seventh grade and eighth grade years) he became a member of "The Program." He went over to Jensen's house for regular Program "treatments" with Jensen. He did this for the entirety of the summer and was joined by other juvenile boys at Jensen's house.

7. The North Dakota Victim summarized what happened with Jensen after the trip to Watford City "it just slowly turned, you know went from you

know like little therapy deals into more heavily massages, into talking you into doing things that you know you shouldn't be doing." As described below, this victim progressed through various levels of "The Program."

8. Similarly, Jensen previously accompanied another juvenile male on an athletic-related trip to California and administered "The Program" to the victim before, during and after this trip. Jensen was the only chaperone on this trip to California.

9. During the North Dakota Victim's time in "The Program," the victim said Jensen would set up "The Program" treatments at his house and Jensen would tell the victim when he could or could not come over. Jensen provided the victim his telephone number. The North Dakota Victim communicated with Jensen face to face and over the phone.

10. Jensen used the telephone to contact victims about "The Program." After the North Dakota Victim moved away from Miles City for a short period of time and then returned, Jensen called him on the telephone. Following this phone call, the North Dakota Victim, who was previously in "The Program," rejoined "The Program." The first time the North Dakota Victim was in "The Program" he only progressed through levels one and two, which he described as full frontal and back massages from

Jensen. After rejoining "The Program" following his return to Miles City, he progressed to levels three and four, which included masturbation to ejaculation.

11. Other victims also recalled talking with Jensen on the telephone. One victim would call Jensen on the phone to confirm Jensen was home before going over to Jensen's house. Another victim recalled Jensen having a cellular telephone.

12. A relative of the defendant would tell law enforcement that he/she observed apparent computer print-outs of "The Program" among the defendant's possessions. One of Jensen's relatives described seeing a printout copy of "The Program" that he/she knew had not been written by Jensen. The relative described Jensen showing the printout copy to his/her juvenile male friend and explaining "The Program" to him.

13. In approximately 1995, one of Jensen's daughters discovered that Jensen had "high school-aged boyfriends all over the country." Jensen was convincing these boys that he was also a high school boy. She confronted Jensen about it and he said that he was just "counseling them." She later became aware that Jensen was "cat-fishing" underage boys throughout the United States. Cat-fishing refers to creating a false online

identity, often for social networking and online dating sites. A relative would later describe that Jensen used a computer in the house. Jensen was online and using other student's photographs to represent himself as a teenage boy in the online community, including online in chatrooms and dating websites. Moreover, a witness would inform law enforcement that he/she observed Jensen, in and after this same time period, online and deceptively attempting to contact minor children, particularly males. Internet searches that were ultimately discovered on the defendant's computer were consistent with a sexual interest in children.

14. During the period the defendant engaged in this conduct, Sexual Assault was illegal under Montana law, pursuant to Mont. Code Ann. § 45-5-502.

DATED this 20th day of February, 2019.

        KURT G. ALME
        United States Attorney

        */s/ Zeno B. Baucus*
        ZENO B. BAUCUS
        Assistant United States Attorney

        */s/ Bryan T. Dake*
        BRYAN T. DAKE
        Assistant United States Attorney