**ZENO B. BAUCUS**
**BRYAN T. DAKE**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
2601 Second Avenue North, Suite 3200
Billings, Montana 59101
Phone:   (406) 657-6101
FAX:      (406) 657-6989
Email:   zeno.baucus@usdoj.gov
             Bryan.dake@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 18-155-BLG-DLC |
|---|---|
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| JAMES E. "DOC" JENSEN, JR., | |
| Defendant. | |

### INTRODUCTION

For over twenty years James E. Jensen, Jr. used his unfettered access to young boys and exploited their innocence and belief in him for his own sexual gratification.  Jensen's position as the athletic trainer at Custer County District High School gave him the ability to sexually abuse young boys under a guise of

helping them, thereby altering his victims' lives forever. Jensen's behavior is deplorable and truly highlights what it means to abuse a position of trust. In the end, Jensen faces this Court for sentencing and a fifteen year maximum sentence; the pain and suffering endured by his victims will last a lifetime. In considering all of the factors under 18 U.S.C. § 3553(a), the government believes a statutory maximum sentence of fifteen years is appropriate and holds Jensen accountable for his decades-long abuse of young boys.

## BRIEF SUMMARY

Mr. Jensen entered a plea of guilty to the charge of coercion and enticement. PSR ¶¶ 1,4. The Presentence Investigation Report (PSR) has established a criminal history score of 0, which places Jensen in a criminal history category of I. PSR ¶ 68. The PSR has a calculated total offense level of 28, with a guideline range of imprisonment for the offense of 78 to 97 months. PSR ¶¶ 63; 99.

## SENTENCING WITNESSES

As of the date of this filing, the government does not anticipate any sentencing witnesses. If any witnesses, particularly victims in this case, want to speak at sentencing, the government will promptly notify the Court.

///

///

## ARGUMENT
## The Offense Conduct

The factual recitation of Jensen's abuse of children is accurately reflected in the PSR.   The government highlights the following facts for the Court.

James E. "Doc" Jensen, Jr. served as the athletic trainer for Custer County District High School in Miles City from 1970 to approximately 1998. PSR ¶ 7.   In this position, Jensen developed "The Program," which became a conduit for Jensen's sexual abuse of high school-aged male athletes. *Id.*   Jensen informed the boys that by participating in "The Program" they could improve their physical performance through elevated levels of testosterone. *Id.*   In short, Jensen performed various sexually related activities on boys during sessions in his home or at school, and he told the boys that such activity would elevate their body mass, muscle size, etc. *Id.*   The sexual activity consisted of masturbation, anal stimulation, and oral sex.

Jensen had a number of victims at the high school, and he repeated this conduct countless times. One victim said he participated in "The Program" three to four times a week during sports seasons in his freshman and sophomore years. PSR ¶ 9 (He stopped participating because he was not noticing results).   Other victims gave startling timeframes for the abuse: two to three times a week for

approximately six months; one victim was abused for three to four months; another said he received "100 treatments" from Jensen; one victim only went ten or twelve times because it "felt weird"; another described abuse, including oral sex, two to four times a week for a period of years; another twelve sessions over weeks; another six to eight weeks; and another two to three times a week. PSR ¶¶ 10; 12; 27; 28; 31; 36; 42.   This abuse occurred to athletes of various sports, including football, hockey, and wrestling.   Victims described that Jensen kept track of athlete "progress" in "The Program," including measuring a victim's penis with a tape measure. PSR ¶ 16.

   Jensen provided the victims with printed material about "The Program." PSR ¶ 12; 33.   Jensen told one victim not to describe "The Program" to anyone else because the victim "may use the wrong medical terms and that people would misunderstand." PSR ¶ 9.   Jensen later admitted to law enforcement that "The Program" was based on Chinese acupuncture that he found online and alleged that it was "supposed to help produce testosterone" in the young men. PSR ¶ 12.   Jensen even collected the semen from the young men and tested it to "evaluate" the testosterone levels; Jensen later said he could never determine if the levels actually elevated. PSR ¶ 16.   According to Jensen, "The Program" did not work. PSR ¶ 25.

Jensen went to lengths to keep his abuse of boys, and interest in young boys, private. His daughter described boys coming over to the house, the boys going to the basement with Jensen, and his daughter was not allowed in the basement. PSR ¶ 33. Jensen's ex-wife was not aware of Jensen's abuse of boys but did discover a photo album in the basement of their house that contained pubic hair in the photo sleeves and names of the sources; Jensen told her it was "research." PSR ¶ 34. Another daughter noted that Jensen was using student photographs online to represent himself as a young boy. PSR ¶ 39. Jensen later told one victim that he was "counseling" a gay junior high student after the victim found Jensen using a profile picture of a sixteen to twenty-year old male. PSR ¶ 43.

The actual number of Jensen's victims may never be known. In his original interview, Jensen said approximately thirty to forty boys participated. PSR ¶ 20. There are currently thirty-two identified victims in a civil lawsuit against Jensen. PSR ¶ 47. The lives Jensen impacted are countless.

## Sentencing Analysis

Section 3553(a) of Title 18 of the United States Code contains prefatory language —"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) sets forwards additional considerations for the Court when imposing an appropriate sentence. "[T]he nature and circumstances of the offense and the history and characteristics of the defendant" and the "kinds of sentences available" should be considered. 18 U.S.C. § 3553(a)(1),(3). The Court should similarly consider the sentencing guidelines and policy statements, as well as "the need to avoid unwarranted sentencing disparities." 18 U.S.C. §3553(a)(4),(5),(6). Finally, the Court should consider "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(7).

Beyond statutory guidance, the Court is directed to the sentencing guidelines promulgated from the Sentencing Commission. Calculating an accurate sentencing guideline range is the appropriate start for the Court. *Rita v. U.S.*, 551 U.S. 338, 347-348 (2007). Calculating and referencing to the sentencing

guidelines allows defendants to start out with equal treatment and possible consequences, instead of being subjected to "the luck of the draw." *Gall v. United States*, 552 U.S. 38, 49 (2007).

The Court cannot, without explanation, ignore a sentencing factor or "shrug off" the Sentencing Commission's statements of policy. *United States v. Bragg*, 582 F.3d 965, 970 (9th Cir. 2009). If a district court contemplates a non-guidelines sentence, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

## Sentencing Recommendation

The United States respectfully recommends a sentence of 180 months' incarceration, followed by three years of supervised release and a $100 special assessment.

In considering the statutory factors in 18 U.S.C. § 3553(a), an upward variance is appropriate.[1] As more aptly described below, the nature and

---

[1] The government is not requesting an upward departure from the guidelines. Such a departure is procedurally different, based on policy statements contained within the sentencing guidelines, and requires notification from the Court pursuant to *Irizarry v. United States*, 553 U.S. 708 (2008) and Fed. R. Crim. P. 32(h). In considering a variance, the Supreme Court has stated that the district court should not "extend the reach of Rule 32(h)'s notice requirement categorically" in

circumstances of the offense and seriousness of the offense warrant an upward variance. 18 U.S.C. § 3553(a)(1) and (2).  Jensen served as a high school athletic trainer for almost thirty years; there are over thirty identified victims of his sexual abuse and countless other victims.[2]  Jensen used these victims for his own sexual gratification and hid his true intentions behind an alleged massage program.  The characteristics of the defendant, namely his sexual interest in young boys, made him a danger to the community and it is his deranged character that concocted a scheme to take advantage of kids. 18 U.S.C. § 3553(a)(1).  Further, there is a need to provide just punishment for Jensen's offense.  18 U.S.C. § 3553(a)(2).  Jensen's high-end of the guideline range contemplates a sentence of approximately eight years, however a more substantial punishment is appropriate given the number of victims, number of abuse incidents, and number of years underlying his conduct. Indeed, his victims have endured pain and punishment that will last their lifetime. Finally, as discussed in detail below, there is a need to avoid unwarranted

---

considering whether the factual basis for a sentencing variance would be a "surprise" and instead should only provide parties a reasonable opportunity for a continuance "when a party has a legitimate basis for claiming that the surprise was prejudicial." *Irizarry*, 553 U.S. at 715-716.  The government believes that the parties are well aware of the factual components of the case that may justify a variance, as detailed in the case discovery and accurately captured in the PSR.
[2]  Jensen himself estimates that he applied massaged to 800 students.  PSR ¶ 25.

sentencing disparities with sexual offenders similarly situated to Jensen.   18 U.S.C. § 3553(a)(6).   An upward variance is appropriate.

The nature and circumstances of the offense are almost beyond belief.   A man, tasked with helping student-athletes, sexually abused them under the guise of an internet program that would allegedly help them be better athletes.   The number of victims and incidents of abuse is staggering and causes pause.   There are over thirty victims identified to date, each having multiple incidents with Jensen, and each suffering this abuse for months or even years.   Jensen served in this position for almost thirty years, and it seems only logical that a number of victims will never be identified.   This was anything but an isolated event or conduct.   Jensen's conduct in this case is egregious and deeply disturbing.

Jensen's ability to manipulate these boys with this program can be contributed to numerous factors, each that further highlight Jensen as a predator.   First, the boys trusted Jensen.   They believed in him and believed that he was helping them medically.   Kids should be able to trust what an adult says about being able to help them; Kids should not have to guess if an adult's true intentions are deviant.   Second, Jensen told the boys that the sexual abuse would help them as athletes.   He even kept track of their "success" in "The Program" through his logs and measurements of the athletes.   Third, Jensen sought resources online as a

way to justify his abhorrent behavior and then printed the materials about "The Program" to further legitimize his conduct to these young boys.    All of these reasons show how Jensen abused his position on so many levels and actively used his position to accomplish his end goal of molesting boys.

Thirty-two.    This is the number of identified victims of Jensen's abuse. What cannot be overstated is the pain endured by these young boys, many of whom are now grown men, and the profound impact of Jensen's criminal conduct.    The words of the victims are powerful; it is these words that cannot be lost when considering the need for just punishment and the need to promote a respect of the law.    The following thoughts by victims properly describe what so many of Jensen's victims feel, how they suppressed the profound impacts of this abuse, and how they will continue to feel, on daily basis, because of Jensen:

- "I have been in counseling and started anxiety medication trying to process through all of this.    I don't know what to tell my kids…[t]his past year has been quite honestly one of the worst years of my life."
- "I would rather remain sick or injured than visit a physician.    I would rather be alone in a room with nothing but my near-daily suicidal ideations than to ever risk opening up to a therapist."
- "This has taken a toll on me mentally and physically more than I thought

possible.   My business and home life are directly impacted by the horrible acts that happened over a span of about 3 years.   This isn't just one nightmare I deal with, but many."

- "I have trust issues involving my children and school, sports, etc…all of which stem from the disgusting amount of abuse that occurred to me."
- "James Jensen has stolen a piece of my teenage years away from me."
- "Doc Jensen has taken so much from so many families, and is still taking."
- "I just took my morning pill for PTSD and mood difficulties from this case, which is now my new norm; taking a pill every morning because I can't manage the anxiety, irritability, night sweats, relationship with my wife and children without help."
- "Believe me sir, I would stake my life on the fact that there are a great many more men now, but boys from back then, that suffered sexual abuse at the hands of Mr. Jensen."
- "Initially I felt ashamed, like I should have known what had happened to me was wrong.   I look at it through the eyes of an adult, and have to remind myself that I was a child at the time."

*See* PSR ¶ 49 and pg. 24-39.   It is these words that describe the lasting

impact of Jensen's disgusting conduct, and it is these words that should not be forgotten when considering an appropriate sentence.

The Court should consider the need for unwarranted sentencing disparities, and the government takes solace in the fact that cases involving similar systematic abuse of children are rare. However, these cases exist, including another similar defendant in Montana. Stanley Patrick Weber was sentenced by Judge Morris to 220 months of incarceration for aggravated sexual abuse of a child, attempted sexual abuse of a child and abusive sexual contact of a minor. *United States v. Stanley Patrick Weber*, CR 18-14-GF-BMM, Doc. 145. Weber, a pediatrician, worked for Indian Health Services on the Blackfeet Indian Reservation, where he used his position to lure young boys to his home and then sexually abused them. *Id.* at Doc. 137. Weber, who was nearly seventy years old at the time of sentencing, had also exploited boys through his position at other hospitals, including on the Pine Ridge Reservation. *Id.* at Doc. 137, p.9.

In a strikingly similar case to Jensen, a federal judge in the Western District of Michigan sentenced former athletic trainer Lawrence Gerard Nassar to sixty years of imprisonment for receipt of child pornography, possession of child pornography and obstruction of justice. *United States v. Lawrence Gerard Nassar*, No: 1:16-CR-242, Doc. 48. In its sentencing memo, the government

noted that Nassar "led a double-life" between being a "world-renowned expert for elite athletes" and a "predator" who "used his position and authority to sexually exploit children." *Id*. at Doc. 44, p. 6.

The government is aware that the defendant does not have a criminal history and that the government request for a statutory maximum sentence is extreme. The government would certainly make the same recommendation for an individual with a criminal history category of six. But, the government cannot imagine a situation where an individual with a *more* significant criminal history would ever be in a position similar to Jensen at a public school with seemingly unlimited and unchecked access to children. Further, if Jensen were prosecuted for conduct occurring today, he would now face a mandatory minimum term of ten years to life imprisonment. *See* 18 U.S.C. § 2242(b) (2019). Therefore, a statutory maximum sentence of fifteen years is appropriate and not outside the heartland for appropriate sentences for these types of crimes.

A sentence of imprisonment should protect his victims, and the public. The sentence should also provide deterrence, including general deterrence for individuals, particularly those in a positon of trust, from ever engaging in similar conduct. The sexual abuse of children, whether it is blatant and overt abuse or abuse that is discrete and disguised under the premise of some of kind of medical

treatment is wholly unacceptable and will never be tolerated. It is Jensen who is responsible for having a negative impact on countless lives, with long term impacts reaching beyond the years. He took advantage of young boys who trusted him. Individuals in such trustworthy positions should understand that they are held to high standards of moral decency and failure to comply with these standards will result in significant punishment.

A sentence of 180 months' imprisonment, followed by three years of supervised released, and payment of a special assessment fee, adequately addresses all sentencing considerations and is sufficient but not greater than necessary.

DATED this 19th day of July, 2019.

        KURT G. ALME
        United States Attorney

        */s/ Zeno B. Baucus*
        ZENO B. BAUCUS
        Assistant United States Attorney

        */s/ Bryan T. Dake*
        BRYAN T. DAKE
        Assistant U.S. Attorney
        Attorney for Plaintiff